**Fifyne HENDERSON, Appellant,**

**v.**

**Major George BLUEMINK.**

**No. 73-1816.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 22, 1974.

Decided July 26, 1974.

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief, for appellant.

Karen K. Siegel, Atty., Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, and Morton Hollander, Atty., Dept. of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, BASTIAN, Senior Circuit Judge, and TAMM, Circuit Judge.

BASTIAN, Senior Circuit Judge:

Appellant sought to recover damages in District Court for the alleged negligence of Major George Bluemink, an officer and doctor in the United States Army stationed at Walter Reed Army Medical Center. The complaint alleged that Major Bluemink (1) "improperly treated, diagnosed, and prescribed improper medication" for appellant's illness, (2) "failed to take the necessary medical tests, analyses, [and] biopsies, before making such a decision," and (3) failed expeditiously to "take medical measures to prevent the condition which was progressing rapidly." Armed with the stipulation that "at all pertinent times [he] was acting within the scope of his official employment as a medical officer in the United States Army," Major Bluemink sought and was granted summary judgment on the ground that he was "entitled to absolute immunity." [1] This appeal followed. Inasmuch as

---

1. Order of April 27, 1973, C.A. No. 2088–72, U. S. District Court for the District of Columbia.

we disagree with the District Court's conclusion that by virtue of his employment as an Army officer appellee is clothed with absolute immunity from civil liability, we reverse and remand for further proceedings.

I

■■■ Whether judicially or statutorily [2] created, immunity of public officers and employees from personal liability is dependent upon the relationship of the officer or employee to the government, and the nature of the duties performed. As a general rule, government officials are privileged to enjoy a blanket of immunity from civil liability for torts committed while acting in the line of their official duties.[3] In *Barr v. Matteo*,[4] the Supreme Court stressed the importance of insuring that government officials be

> free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of *policies* of government.[5]

The privilege is not restricted to executive officers of cabinet rank,[6] but the "immunity conferred [is] not . . .

the same for all officials for all purposes."[7] Accordingly, while an absolute immunity exists for judges and executive officers, a more limited form of the privilege is extended to lower officials.[8] The Court has declined, however, to establish a

> fixed, invariable rule of immunity but has advised a discerning inquiry into whether the contributions of immunity to effective government in particular contexts outweighs the perhaps recurring harm to individual citizens . . . .[9]

■■ This Court has engaged in precisely such a "discerning inquiry" in its formulation of a rule of immunity to be applied to the District of Columbia, its governmental units, and its officers. In *Elgin v. District of Columbia*,[10] we sounded the death knell of the "governmental-proprietary"[11] distinction and heralded the coming of the more workable "discretionary-ministerial" test which we later formally adopted in *Spencer v. General Hospital of District of Columbia*.[12] We recognized in *Elgin* that where a government acts to formulate policy its decisions are immune from suit because "heavily fraught with discretionary determinations."[13] Where that same government acts to execute its policy, however, it is charged with the duty of reasonable care, and may incur liability

2. *See* Part II of this Opinion *infra*.

3. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

4. *Id.*

5. *Id.* at 571, 79 S.Ct. at 1339 (emphasis added).

6. *Id.* at 572, 79 S.Ct. 1335.

7. Doe v. McMillan, 412 U.S. 306, at 319, 93 S.Ct. 2018, at 2028, 36 L.Ed.2d 912 (1973).

8. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

9. 412 U.S. at 320, 93 S.Ct. at 2028.

10. 119 U.S.App.D.C. 116, 337 F.2d 152 (1964).

11. The term "governmental-proprietary", apparently coined in Jones v. District of Columbia, 51 App.D.C. 319, 279 F. 188 (1922), denotes the distinction between enterprises which are characteristically regarded as public, on the one hand, as distinct from those which are regarded as private, on the other. Its *naissance* is found in Brown v. District of Columbia, 29 App.D.C. 273 (1907) and District of Columbia v. Tyrrell, 41 App.D.C. 463 (1914), and it has been diversely applied in District of Columbia v. Totten, 55 App.D.C. 312, 5 F.2d 374 (1925), Tillman v. District of Columbia, 58 App.D.C. 242, 29 F.2d 442 (1928), and Calomeris v. District of Columbia, 96 U.S.App.D.C. 364, 226 F.2d 266 (1955).

12. 138 U.S.App.D.C. 48, 425 F.2d 479 (1969).

13. 119 U.S.App.D.C. at 119, 337 F.2d at 155.

based upon its negligent breach thereof.[14] Seeking "not to jeopardize 'the quality and efficiency of government itself' by exposing the exercise of discretion *in the formulation of governmental policy* to the scrutiny and sanction of tort liability",[15] we concluded in *Spencer* that a municipal hospital is not immune from civil liability merely by virtue of its status as a governmental unit. The "discretionary-ministerial" analysis of governmental immunity which we applied in *Spencer* to governmental units of the District of Columbia is equally appropriate in its application to District of Columbia officers.[16] Since judicial creation of municipal immunity is motivated by the same policies which underlie judicial creation of federal immunity,[17] we find no justification in creating for appellee that which we have declined to create for doctors employed by the District of Columbia.

██ Turning to the facts of the instant case, we cannot say that the District Court was asked to review federal policy decisions made by appellee in the area of health. Rather, the complaint (no less—but certainly no more—than one sounding in malpractice) charged that appellee, albeit a government officer, was negligent in the practice of medicine. Since appellee is neither a judge nor an executive officer, and is therefore clothed at best with a limited form of immunity,[18] we reject the conclusion of the District Court that appellee's employment by the Army as a medical officer confers absolute immunity for his allegedly tortious conduct. That court's perception of appellee's governmental employment as the dispositive factor in the litigation is to us merely the point of departure. To be sure, the acts complained of involved the exercise of discretion in the normal usage of that term but the significant factor is that the discretion exercised might have been medical rather than governmental.[19] The chief policy underlying the creation of immunity for lower governmental officials is mainly that which stems from the desire to discourage "the fearless, vigorous, and effective administration of

14. *Id.* For example, while the planning and adoption of a sewage system is a discretionary governmental function and therefore immune from suit, the actual construction of the sewers consists of ministerial acts which must be effectuated with reasonable care.

15. 138 U.S.App.D.C. at 50, 425 F.2d at 481 (emphasis added). "Thus in 'the execution of policy as distinct from its formulation,' the District of Columbia [may] be held to the duty of reasonable care which the courts had long enforced against individuals and private associations." *Id.* at 57–58, 425 F.2d at 488–489 (Wright, J., concurring, footnotes omitted).

16. Carter v. Carlson, 144 U.S.App.D.C. 388, at 392 n. 7, 447 F.2d 358, at 362 n. 7 (1971), rev'd on other grounds sub nom., District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

17. *Compare* Doe v. McMillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) with Spencer v. General Hospital of District of Columbia, 138 U.S.App.D.C. 48, 425 F.2d 479 (1969).
Doe v. McMillan involved the liability of both federal and municipal officers. Both this court and the Supreme Court assumed the same standards applied to both sets of

officials. *See* 148 U.S.App.D.C. 280, at 292–294 & n. 26, 459 F.2d 1304, at 1316–1318 & n. 26 (1972), aff'd on that ground, 412 U.S. 306, at 324 n. 15, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973).

18. *See* note 8 *supra*.

19. We recognize that the acts here complained of involve judgment and discretion. The recognition does not resolve the matter, however, for such acts by a government doctor do not necessarily involve governmental discretion. Judge Wright's statement in *Spencer* is particularly apt in this connection:
The point is that *medical*, not *governmental* judgment and discretion are involved. The common law of malpractice, as normally applied to private doctors and hospitals, already grants the leeway properly left for expert judgment in the relatively stringent requirements it imposes upon plaintiffs in medical negligence suits. No further leeway is required for the publicly employed doctor or the public hospital than for their private counterparts.
138 U.S.App.D.C. at 58, 425 F.2d at 489 (Wright, J., concurring, emphasis in original).

policies of government." [20] However, that policy is not applicable to the exercise of normal medical discretion since doctors making such judgments would face the same liability outside of government service as they would face if the complaint below is upheld. *A fortiori,* the threat of liability for negligence would not deter the fearless exercise of medical discretion within government service any more than the same threat deters the exercise of medical discretion outside of government. Holding government medical personnel to the same standards of care which they would face outside of government service in no way burdens their public responsibility or deters entry into government service or the vigorous exercise of public responsibility once having entered that service. [21]

Appellee relies on Bates v. Carlow, [22] and Estate of Burks v. Ross, [23] wherein other circuits, on the basis of absolute immunity, affirmed summary judgments in actions against government physicians. The result in *Bates* is not persuasive since the court there advanced no reasoning which would indicate that our decision in *Spencer* should be limited to municipal immunity. In *Estate of Burks,* the court applied a "discretionary-ministerial" analysis, but failed to draw the distinction between medical and governmental discretion which we deem essential to a proper application of that analysis. [24] In sum, we decline to alter the course which we set in *Elgin,* delineated in *Spencer,* and continue to follow today. We turn now to a brief examination of the applicability to the case at bar of the Federal Tort Claims Act and other similar provisions.

## II

Generally, suits involving damages caused by an employee [25] of the United States are brought under the Federal Tort Claims Act [26] which provides a basis for recovery against the United States. However, with the exception of a provision in the Act [27] and

20. *See* Barr v. Matteo, 360 U.S. 564, at 571, 79 S.Ct. 1335, at 1339 (1959).

21. Of course, further experience with the particular problems associated with compulsory exercise of medical discretion, that is, medical judgments required because of government service but which might well be avoided outside of government service, may alter the standards of care applicable to the exercise of medical discretion or may give rise to a limited immunity. There is nothing in the record at this stage of the proceedings, however, to indicate that any such compulsory exercise of medical discretion was involved in Major Bluemink's case. We therefore decline to uphold the judgment below on any speculation that such might have been the case.

22. 430 F.2d 1331 (10th Cir. 1970).

23. 438 F.2d 230 (6th Cir. 1971).

24. In an action for negligent custodial care of plaintiff's decedent, plaintiff named as defendants Dr. Ross (Director and Administrator of a Veterans' Administration Hospital), Dr. Ging (Director of Neuropsychiatry at the hospital), four nurses, and three nurses' assistants, all of whom were federal employees. We agree that Dr. Ross, *when acting as Director or Administrator of the hospital,* must necessarily have exercised a great deal of discretion *as a government officer.* We further agree with the court's characterization of the duties of the nurses and their assistants as ministerial. However, the grant of absolute immunity to the two doctors does not comport with our analysis of medical *vis à vis* governmental discretion. For those acts which the doctors performed in an administrative capacity— and thus heavily fraught with governmental discretion—we agree that immunity should attach. We must part company with the court, however, where acts of a strictly medical nature are concerned.

25. At the time of the alleged negligence, appellee was an employee of the United States within the meaning of that term for purposes of the Federal Tort Claims Act. 28 U.S.C. § 2671.

26. 28 U.S.C. § 2671 et seq. We have no occasion, on the facts before us, to decide whether the United States would be liable under the Federal Tort Claims Act for the alleged negligence of Major Bluemink.

27. 28 U.S.C. § 2679 protects federal employees from suits for damages arising out of their negligent operation of motor vehicles during the scope of their government employment. A prospective plaintiff has the exclusive remedy of a suit against the United States under the Tort Claims Act.

others found elsewhere,[28] there is no statutory protection for federal employees from personal liability arising out of their own negligent conduct while acting within the scope of their employment. The Act itself provides that a judgment against the United States shall operate as a bar to any action against the individual employee,[29] but that section proscribes a double recovery, not a suit against the individual employee in the first instance.

■ We note with particular interest the statutory provision relieving Veterans' Administration medical personnel from personal liability for malpractice.[30] The extension of similar protection to the class of which appellee is a member is properly within the realm of the legislative branch of the United States. We refrain from affording absolute immunity by judicial decision.

### III

We remand in order for the District Court to receive evidence bearing on the issue whether the acts complained of were immune from suit under our *Spencer* analysis. Our remand is not to be taken as any indication of our views on the merits of the claims presented in the law suit. We hold only that on the facts before us the District Court erred in granting summary judgment for appellee on the ground of absolute immunity.

The case is remanded for further proceedings not inconsistent with this opinion.

So ordered.

---

28. 38 U.S.C. § 4116 protects medical personnel in the Veterans' Administration, Department of Medicine and Surgery from personal liability in suits for malpractice.

Similarly, 46 U.S.C. § 745 provides that a suit in admiralty against the United States "shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . ."

29. 28 U.S.C. § 2676 provides:

The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.

30. *See* note 28 *supra.*