Gary L. MISKO, Plaintiff,

v.

UNITED STATES et al., Defendants.

Civ. A. No. 77–0874.

United States District Court,
District of Columbia.

June 22, 1978.

Leonard S. Rubenstein, Alexandria, Va., for plaintiff.

William H. Briggs, Jr., Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

SIRICA, District Judge.

This action is presently before the Court on motions by all defendants to dismiss on grounds of immunity. The Court has already summarized the factual allegations of the complaint in its January 9, 1978 Memorandum Opinion dealing with venue and service of process objections raised by various defendants. 77 F.R.D. 425.

As presently constituted, this action involves a claim by a former National Guard officer against the United States and four named individuals, all U.S. Army medical officers. Plaintiff's claim grew out of an incident which occurred while he was on active duty with the Virginia National Guard. Count One of the complaint alleges that the individual defendants, all psychiatrists assigned to the Walter Reed Army Medical Center, administered drugs to the plaintiff and kept him confined at Walter Reed against his will and in the absence of medical justification. Plaintiff alleges that these actions violated his fifth amendment rights to liberty and due process of law and requests money damages against each indi-

vidual defendant in the amount of $250,000. Count Two states a claim for negligent medical treatment against the individual doctors and, under the Federal Tort Claims Act, against the United States as well. The defendants' motions contend that both counts are barred by the *Feres* doctrine and principles of intra-military immunity.

In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Court held that the United States is not liable, under the Tort Claims Act, for injuries to military personnel which "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. This holding was broadly reaffirmed just last term in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). In this Court's view, plaintiff's malpractice claim stated in Count Two runs squarely into the *Feres* doctrine and the extensive lower court case law which has extended it to claims against servicemen sued in their individual capacities for damages.

▪▪▪ First, there is no longer any question that *Feres* applies with equal force to members of the National Guard whose injuries are incident to active military duty. The *Stencel* case itself involved a plaintiff injured while assigned for training with the Missouri National Guard. 431 U.S. at 667 n. 1, 97 S.Ct. 2054. Second, all the events detailed in the complaint arose out of plaintiff's period of active duty at Camp Pickett, Virginia and were an immediate result of plaintiff's duties as Officer in Charge of a mortar firing range. Equally important is the fact that this case involves tortious acts against an active duty serviceman which are alleged to have occurred solely at the hands of military doctors working at military medical facilities and performing official duties. This in itself is a sufficient basis on which to invoke *Feres* immunity. *See, e. g., Jefferson v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (companion case to *Feres* ); *United States v. Griggs,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (companion case to *Feres* ); *Harten v. Coons,* 502 F.2d 1363 (10th Cir.

1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975); *Shults v. United States,* 421 F.2d 170 (5th Cir. 1969); Annot., 31 A.L.R.Fed. 146, § 22 (1977).

Plaintiff's Tort Claims Act malpractice claim is therefore barred by *Feres.* Lower courts have, almost without exception, applied *Feres* principles directly to suits against individual servicemen; plaintiff's Count Two malpractice claims against the individual doctors are therefore also barred on grounds of *Feres* immunity. *See, e. g., Tirrill v. McNamara,* 451 F.2d 579 (9th Cir. 1971); *Bailey v. DeQuevedo,* 375 F.2d 72 (3d Cir.), *cert. denied,* 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274 (1967); *Pisciotta v. Ferrando,* 428 F.Supp. 685 (S.D.N.Y.1977). As the ninth circuit noted in *Tirrill:* "Our Court has consistently held that an army physician is immunized from tort liability to a fellow soldier when the alleged act of malpractice occurred in a military hospital and was committed by the physician in the line of his military duty." 451 F.2d at 579.

Although the plaintiff relies heavily on the D.C. Circuit's decision in *Henderson v. Bluemink,* 167 U.S.App.D.C. 161, 511 F.2d 399 (1974), that case is wholly inapposite to the *Feres* immunity question presented here because it involved an action by a *civilian* against an Army medical officer. The court there considered principles of immunity for public officers and employees enunciated in cases like *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), to conclude that absolute immunity was not warranted in the circumstances of that case. The *Feres* doctrine is not mentioned in the *Henderson* decision; the holding of that case has nothing whatever to do with the special intra-military immunity questions presented in the instant motions. *See generally Martinez v. Shrock,* 537 F.2d 765, 766–77 (3d Cir. 1976), *cert. denied,* 430 U.S. 920, 97 S.Ct. 1339, 51 L.Ed.2d 600 (1977); *id.* at 773–74 (Seitz, C. J., dissenting). *But see id.,* 430 U.S. 920, 97 S.Ct. 1339, 51 L.Ed.2d 600 (1977) (White, J., dissenting from cert. denial).

Count One of the complaint, however, is not grounded on a common law negligence

theory—traditionally the heart of the *Feres* doctrine—but on a cause of action for damages arising directly under the fifth amendment for deprivation of plaintiff's rights to liberty and due process of law. This theory must overcome a major preliminary hurdle: the question whether there is a federal cause of action for money damages directly under the fifth amendment in the first place. This is an open question in this circuit. *See, e. g., Cardinale v. Washington Technical Institute,* 163 U.S.App.D.C. 123, 128 n.5, 500 F.2d 791, 796 n.5 (1974). *See also Briggs v. Goodwin,* 186 U.S.App.D.C. 179 at 186 n.8, 569 F.2d 10, at 17–18 n.8 (1977). And even assuming that such a cause of action exists, plaintiff concedes that he would encounter at least a qualified official immunity defense. *See Henderson v. Bluemink,* 167 U.S.App.D.C. 161, 165, 511 F.2d 399, 403 (1974) (malpractice action by civilian against Army medical officer); *Alvarez v. Wilson,* 431 F.Supp. 136, 143–47 (N.D.Ill.1977) (damage action under fifth amendment by military officer against military medical officer). But the Court need not address either of these issues because, in the Court's view, the claim stated in Count One of the complaint is barred by the *Feres* doctrine.

Many medical malpractice claims against federal officers or employees are susceptible of restatement as constitutional torts, particularly under the fifth amendment's due process clause. *See generally Paul v. Davis,* 424 U.S. 693, 694–701 & 702 n.3, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (refusal to recognize due process claim where government action gave rise to common law defamation claim under state law). In the instant case, the very same acts which in Count Two of the complaint are alleged to constitute negligent medical diagnosis and treatment become, in Count One, violations of "plaintiff's rights to liberty and to due process of law as guaranteed by the Fifth Amendment to the United States Constitution."

Even assuming that Count One does state a valid claim for which money damages can be granted, the question still remains whether the characterization of the malpractice claim in constitutional terms should make any difference in application of the *Feres* doctrine. The Court concludes that it should not. Any other result would mean that the *Feres*-based immunity of armed forces medical officers could be abrogated through an exercise in pleading.*

Wholly apart from *Feres,* which was originally based on sovereign immunity principles and an interpretation of the Federal Tort Claims Act, there is authority to the effect that military personnel acting within the scope of their authority are generally immune from actions brought by other members of the armed forces. In the *Feres* case the Court explained that there was no analogous private liability (*i. e.,* liability against individual military officers) to the theory of liability there stated against the United States:

> We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the government he is serving.[10]
>
> [10] Cf. *Dinsman v. Wilkes,* 12 How. 390, 13 L.Ed. 1036 and *Weaver v. Ward* (1616) Hobart 135, 80 Eng. Reprint. 284 *as to intentional torts.*

\*　　\*　　\*　　\*　　\*　　\*

340 U.S. at 141, 71 S.Ct. at 157 (emphasis added). It is this factor—grounded ultimately on considerations of military discipline—which led lower courts to expand *Feres* principles to actions against individual servicemen. *See Bailey v. DeQuevedo,* 375 F.2d 72, 73–74 (3d Cir. 1967).

The military discipline considerations underlying *Feres* were recently rearticulated in *Stencel Aero Engineering Corp. v. United States.* Quoting *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed.

---

\* On October 8, 1976, Congress enacted legislation which makes a Tort Claims Act action against the United States the sole remedy for injuries "caused by the negligent or wrongful act or omission" of military medical personnel. Pub.L.No. 94–464, 90 Stat. 1985 (codified at 10 U.S.C. § 1089 (1976)). The act was not retroactive, *id.* § 4, and does not apply to the claims in this action.

**516**

139 (1954), the Court noted that this policy factor involves "the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . ." 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977). It is based in part on avoiding trials which would second-guess military orders or "require members of the armed services to testify in court as to each other's decisions and actions." *Id.* at 673, 97 S.Ct. at 2059.

These considerations apply with equal force to malpractice actions directly against individual officers, whether those actions be based on common law negligence principles or fifth amendment due process claims. And, as noted in *Stencel*, upholding this sort of immunity claim will not leave servicemen without a remedy for actual injuries: "the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory 'no fault' compensation scheme which provides generous pensions to injured servicemen . . . ." *Id.* at 671, 97 S.Ct. at 2058.

The Court therefore concludes that *Feres* and principles of intra-military immunity bar the particular constitutional claim stated in Count One of the complaint.

An order granting defendants' motion and dismissing the action will accompany this memorandum.